UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| EDWARD JOHNSON, <br><br> Plaintiff, <br><br> v. <br><br> LOCAL LODGE 1759, INTERNATIONAL ASSOCIATION OF MACHINISTS AND AEROSPACE WORKERS, AFL-CIO, <br><br> Defendant. | Case No. 1:16-cv-01893 (TNM) |

## MEMORANDUM OPINION

This suit arises from Allied Aviation Services' ("Allied") termination and reinstatement of Plaintiff Edward Johnson. Mr. Johnson alleges that his union, Defendant Local Lodge 1759 ("Local Lodge"), breached its duty of fair representation. Local Lodge moved for summary judgment. The Court twice advised Mr. Johnson to respond to Local Lodge's motion or the Court would proceed without his opposition. Mr. Johnson never responded. The Court now considers Local Lodge's motion without opposition from Mr. Johnson. For the reasons below, the Court will grant summary judgment to Local Lodge.

**I.**

Mr. Johnson worked for Allied as a Tank Farm Operator at Reagan National Airport. Statement of Undisputed Material Fact ("SUMF") ¶¶ 1–3, ECF No. 48-6.[1] He was responsible for monitoring fuel levels and fueling aircraft. *Id.* ¶ 3.

---

[1] Local Lodge included a statement of undisputed material facts ("SUMF") with its Motion for Summary Judgment. SUMF, ECF No. 48-6. Under Local Rule 7(h) "the Court may assume that facts identified by the moving party in its statement of material facts are admitted, unless such a fact is controverted in the statement of genuine issues filed in opposition to the motion." Because Mr. Johnson has filed no opposition, the Court will assume that facts identified in Local Lodge's SUMF are admitted.

Local Lodge represents the fueling operations employees at Allied for collective-bargaining purposes. *Id.* ¶ 4.[2] The collective bargaining agreement between Allied and the union covered the terms of Mr. Johnson's employment. *Id.* ¶ 6. Allied also maintained an "Hourly Employee Handbook" that governed bargaining-unit employees, which included a "Code of Conduct" for Allied employees. *Id.* ¶¶ 9–11. Mr. Johnson received and acknowledged the handbook. *Id.* ¶¶ 9, 12.

Even so, Mr. Johnson had several conduct violations, including fueling delays, misconduct, insubordination, and violations of safety or operating rules. *Id.* ¶ 13. Then in March 2016, Mr. Johnson fell asleep on the job. *Id.* ¶¶ 14–16. While he was sleeping, the fuel tank he was responsible for monitoring depleted, triggering an alarm. *Id.* ¶ 15. But Mr. Johnson slept through the alarm, causing a temporary shutdown of Reagan National's fueling system. *See id.*; McCulloch Decl. Ex. E, ECF No. 48-5 at 5. Allied's Operations Manager, Michael Baylor, found Mr. Johnson asleep in his chair and immediately suspended him. SUMF ¶¶ 14, 16–17. Allied then set an investigation hearing for the next week. *Id.* ¶ 17.

Mr. Johnson attended the hearing and presented a letter from his doctor. *Id.* ¶¶ 18–19. The letter acknowledged that Mr. Johnson had fallen asleep at work. *Id.* ¶ 19; Grunert Decl. Ex. H, ECF No. 48-3 at 30. The hearing officers found Mr. Johnson guilty of "Sleeping on the Job/Failure to respond to Alarm." SUMF ¶ 20. "Sleeping on the job" is a terminable offense under Allied's employee Code of Conduct, *see id.* ¶ 10, and Allied thus terminated Mr. Johnson, *id.* ¶ 20.

---

[2] Local Lodge is the local-level affiliate of District Local 142 of the International Association of Machinists and Aerospace Workers, AFL-CIO. SUMF ¶ 4. District Lodge 142 is the collective bargaining representative of fueling operations employees of Allied. *Id.*

Under the collective bargaining agreement, any aggrieved employee must present a grievance in writing within ten business days of knowledge of the grievance or complaint. *Id.* ¶ 8. Mr. Johnson did not do so. *Id.* ¶ 21. Tim McCulloch, the union's General Chairperson, was responsible for representation at Allied, including representing employees in the contractual grievance process. *Id.* ¶ 5. Mr. McCulloch learned about Mr. Johnson's termination after the ten-day timeframe. *Id.* ¶¶ 21, 23. Even so, Mr. McCulloch began working to have Mr. Johnson reinstated. *See id.* ¶¶ 21–29.

Mr. McCulloch obtained and reviewed a copy of Mr. Johnson's personnel and discipline files. *Id.* ¶ 24. Based on that review, he determined that a negotiated solution with Allied was the best option since Mr. Johnson had not filed a grievance. McCulloch Decl. ¶ 11, ECF No. 48-4. So from April to June 2016, he negotiated with Allied to have Mr. Johnson reinstated. SUMF ¶¶ 25–29. Mr. McCulloch explained that Mr. Johnson was having personal difficulties and requested that Allied give him a second chance. *Id.* ¶ 26.

Allied, however, upheld Mr. Johnson's termination. *See id.* ¶ 27. Yet Mr. McCulloch persisted. In June 2016, he urged Allied that "[e]veryone in life deserves a second chance," and even offered to meet with Allied's General Manager to discuss Mr. Johnson's situation. *Id.* ¶ 29.

Allied eventually relented, agreeing to reinstate Mr. Johnson. *See id.* ¶¶ 30–31. But Allied maintained that the termination was justified and offered to reinstate Mr. Johnson only under certain conditions. *Id.* For example, Mr. Johnson agreed that Allied would reduce his termination to a "Commitment Letter and upon [Mr. Johnson's] return, a hearing, pursuant to the CBA, w[ould] be held to formalize the action." *Id.* Mr. Johnson also agreed to have his time off considered "a disciplinary suspension without backpay." *Id.* Finally, the agreement established that Mr. Johnson's reinstatement was "conditional and predicated on his good faith efforts to

3

establish himself as a productive and accountable employee." *See* Grunert Decl. Ex. I, ECF No. 48-3 at 31.

Mr. Johnson returned to work in July 2016. SUMF ¶ 36. As required by the reinstatement agreement, Mr. Johnson signed a "Letter of Commitment" when he returned. *Id.* ¶ 37. The Letter of Commitment stated in part, "I understand that if I do not correct my performance problem, I will be discharged without further warning." *Id.* ¶ 38.

Mr. Johnson claims that Local Lodge breached its duty of fair representation for his termination and reinstatement.[3] He complains that he "had no representation in [his] initial hearing," "correct papers were not filed for an appeal hearing," and he did not receive backpay. Compl. at 1, ECF No. 1-2. Mr. Johnson's claims lack merit.

## II.

Summary judgment may be granted only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). A fact is "material" if it can affect the substantive outcome of the litigation. *Liberty Lobby*, 477 U.S. at 248. And a dispute is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.*

In making that determination, the Court must view the evidence in the light most favorable to the nonmoving party, draw all inferences in his favor, and avoid making credibility determinations or weighing the evidence. *Calhoun v. Johnson*, 632 F.3d 1259, 1261 (D.C. Cir. 2011). But "[i]f a party fails to support an assertion of fact or fails to properly address another

---

[3] Mr. Johnson originally included Allied as a defendant, but the Court dismissed Mr. Johnson's claims against the company for failure to prosecute. *See* Order, ECF No. 17.

4

party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for the purposes of the motion." Fed. R. Civ. P. 56(e).

### III.

The duty of fair representation requires unions "to serve the interests of all members without hostility or discrimination toward any, to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct." *Vaca v. Sipes*, 386 U.S. 171, 177 (1967). "A breach of the statutory duty of fair representation occurs only when a union's conduct toward a member of the collective bargaining unit is arbitrary, discriminatory, or in bad faith." *Id.* at 190.

The fair representation duty sets a low bar for unions. "[A] union's actions are arbitrary only if, in light of the factual and legal landscape at the time of the union's actions, the union's behavior is so far outside a wide range of reasonableness as to be irrational." *Air Line Pilots Assoc. Int'l v. O'Neill*, 499 U.S. 65, 67 (1991) (internal quotation marks and citation omitted). And "invidious" discriminatory conduct violates the duty of fair representation. *See id.* at 81; *Aguinaga v. United Food & Comm'l Workers Int'l Union*, 993 F.2d 1463, 1470 (10th Cir. 1993). The bad faith standard "requires a showing of fraud, or deceitful or dishonest action." *Int'l Union of Elec., Elec., Salaried, Mach. & Furniture Workers, AFL–CIO v. NLRB*, 41 F.3d 1532, 1537 (D.C. Cir. 1994) (cleaned up).

Local Lodge breached no duty over Mr. Johnson's termination and reinstatement. Mr. Johnson first complains that he "had no representation in [his] initial hearing"—presumably the investigatory hearing scheduled after Mr. Baylor caught Mr. Johnson sleeping on the job. Compl. at 1. Even so, that failure is not *per se* arbitrary, discriminatory, or in bad faith.

It is not clear why a Local Lodge representative did not attend the hearing, but Allied informed Mr. Johnson that it is the *employee's* obligation to arrange for a union representative if

he wants one. SUMF ¶ 17; Grunert Decl. Ex. G, ECF No. 48-3 at 29. Mr. Johnson has pointed to no statutory or contractual obligation for a union representative to be present at investigatory hearings. And even if the failure of a representative to be present is the union's fault, the representative's role at investigatory interviews is largely observational because "the employer has no duty to bargain with any union representative who may be permitted to attend the investigatory interview." *NLRB v. Weingarten, Inc.*, 420 U.S. 251, 259 (1975). Mr. Johnson has pointed to no evidence suggesting that the union representative's failure to attend was "invidious" discrimination or fraud, deceit, or dishonesty.

Mr. Johnson also complains that "correct papers were not filed for an appeal hearing." Compl. at 1. Under the collective bargaining agreement, "[a]ny *employee* . . . who believes that he[] ha[s] been unjustly dealt with . . . will present the grievance in writing with or through his[] Local Lodge President . . . within ten (10) business days of knowledge of the grievance or complaint." SUMF ¶ 8 (emphasis added). But nothing suggests that Mr. Johnson submitted a written grievance as required; indeed, Mr. McCulloch did not learn about Mr. Johnson's termination until after the ten-day period elapsed. *Id.* ¶¶ 21, 23. So Mr. Johnson is the one who failed to file his grievance within the collective bargaining agreement's ten-day period. *Id.* ¶ 21. More, there is no general obligation for a union to file a grievance whenever an employee is disciplined or terminated. *See Vaca*, 386 U.S. at 191 ("[W]e do not agree that the individual employee has an absolute right to have his grievance taken to arbitration regardless of the provisions of the applicable collective bargaining agreement.").

Finally, Mr. Johnson alleges that Local Lodge violated its duty of fair representation by failing to secure him backpay as part of the reinstatement agreement. Not so. "[A] union must be given a wide range of discretion in representing its members, particularly in the give-and-take

6

process of negotiation." *Am. Postal Workers Union, AFL—CIO, Hdqts. Local 6885 v. Am. Postal Workers Union, AFL—CIO*, 665 F.2d 1096, 1105 (D.C. Cir. 1981). And Mr. Johnson agreed to the Reinstatement Agreement fully aware that it included no backpay. *See* SUMF ¶¶ 31–35.

Indeed, Mr. Johnson testified that Allied never put backpay on the negotiating table. *See* Johnson Dep. at 18, ECF No. 48-2. Given the uphill battle Mr. McCulloch faced to get Mr. Johnson reinstated at all, it was not arbitrary for Local Lodge (and Mr. Johnson) to agree to terms that did not include backpay. Under the collective bargaining agreement, the only grounds by which an arbitrator could reinstate Mr. Johnson would be by finding that Allied did not have just cause to terminate him. SUMF ¶ 8. But Mr. Johnson had a history of infractions, and he admits that he was asleep on the job, *see* Johnson Dep. at 13. Under these circumstances, the Union would struggle to show that there was no just cause for terminating Mr. Johnson. And here, an arbitration was not even pending because Mr. Johnson failed to file a grievance within the collective bargaining agreement's required ten-day period. Foregoing backpay for immediate reinstatement was rational, not arbitrary.

More, Mr. Johnson has pointed to nothing suggesting that Local Lodge's decision not to pursue backpay was discriminatory or in bad faith. The record establishes that Mr. McCulloch repeatedly engaged Allied on Mr. Johnson's behalf. SUMF ¶¶ 23, 26–29. Allied simply would not offer better terms, so Local Lodge and Mr. Johnson reasonably accepted an offer that would return Mr. Johnson to work without backpay. Thus, there can be no claim that Local Lodge breached its duty of fair representation.

In any event, Mr. Johnson's claim for money damages fails because he cannot establish that Allied violated the collective bargaining agreement. "Whether the employee sues both the

labor union and the employer or only one of those entities, he must prove the same two facts to recover money damages: that the employer's action violated the terms of the collective-bargaining agreement and that the union breached its duty of fair representation." *Chauffeurs, Teamsters & Helpers, Local No. 391 v. Terry*, 494 U.S. 558, 564 (1990).

Mr. Johnson was asleep on the job, and sleeping on the job violates the employee Code of Conduct. Johnson Dep. at 13; SUMF ¶ 10. Under that Code, sleeping on the job is a terminable offense. SUMF ¶ 10. What is more, before sleeping on the job, Mr. Johnson had a long history of violations at Allied, and the collective bargaining agreement's progressive disciplinary policy states that a fourth violation will lead to a "Career Decision." *Id.* ¶ 13; Collective Bargaining Agreement, ECF No. 48-3 at 5–6. Nothing suggests that Allied's termination of Mr. Johnson violates the collective bargaining agreement, and so Mr. Johnson's claim for money damages fails.

**IV.**

For all these reasons, Local Lodge's Motion for Summary Judgment will be granted. A separate order will issue.

Dated: June 12, 2019

TREVOR N. McFADDEN
United States District Judge